* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Gillen with modifications.
 * * * * * * * * * * * EVIDENTIARY RULING
Dr. Donald Getz was initially deposed in this case on December 14, 2006. After three hours of testimony, the deposition ended and was rescheduled for January 17, 2007. On January 17, 2007 the deposition was suspended after 3.5 hours of testimony when plaintiff attempted to introduce rebuttal evidence into the record to which defense counsel objected. On February 16, 2007, Deputy Commissioner Gillen denied plaintiff's motion to offer rebuttal evidence of an *Page 2 
audiotape allegedly taken by plaintiff during plaintiff's post-hearing Independent Medical Examination with Dr. Getz. On March 27, 2007, Deputy Commissioner Gillen denied plaintiff's motion to tender an offer of proof. The undersigned hereby affirm Deputy Commissioner Gillen's February 16, 2007 and March 27, 2007 evidentiary rulings.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. Plaintiff is James M. Dorsey and defendant is The Pantry, Inc.,
2. Defendant-carrier is Liberty Mutual Insurance Group.
3. At all relevant times, defendant regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between plaintiff and defendant on or about March 10, 2001, the date of the alleged injury by accident.
4. A Form 60 was filed in this claim on or about April 9, 2001. The description of the injury by accident as listed on the Form 60 reads as follows: Bruise to left shoulder and upper leg, cracked two ribs.
5. On December 30, 2005 plaintiff, by and through counsel, filed a Motion to Provide Medical Treatment. On January 23, 2006 Special Deputy Commissioner Elizabeth M. "Lacy" Maddox denied plaintiff's Motion to Provide Medical Treatment. Plaintiff appealed Special Deputy Commissioner Maddox's Administrative Order denying medical treatment on January 31, 2006.
6. The following were received into evidence as stipulated exhibits: *Page 3 
 a. The parties' Pre-Trial Agreement, marked as stipulated exhibit 1.
 b. A collection of the Industrial Commission Forms filed in this matter as well as plaintiff's medical records, collectively paginated and marked as stipulated exhibit 2.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDING OF FACTS
1. On December 29, 2004 Deputy Commissioner John B. Deluca entered an Opinion and Award in this matter, finding plaintiff's claim for the March 10, 2001 injury compensable and awarding plaintiff temporary total disability compensation from December 4, 2002 through March 6, 2003. This Opinion and Award is HEREBY INCORPORATED BY REFERENCE as if fully set forth herein.
2. Pursuant to a Form 60 dated April 9, 2001, defendants accepted the compensability of plaintiff's March 10, 2001 injury by accident. Defendants' Form 60 description of plaintiff's injury by accident indicates a bruise to plaintiff's left shoulder and upper leg, and two cracked ribs.
3. On December 30, 2005 plaintiff, by and through counsel, filed a Motion to Provide Medical Treatment. Defendants filed a response to plaintiff's motion on January 9, 2006 objecting to plaintiff's motion on the basis that plaintiff's right knee, low back, hip, and leg pain were not a direct and natural consequence of plaintiff's compensable left knee injury. On January 23, 2006 Special Deputy Commissioner Maddox denied plaintiff's Motion to Provide *Page 4 
Medical Treatment. Plaintiff appealed Special Deputy Commissioner Maddox's Administrative Order denying medical treatment on January 31, 2006.
4. As a result of plaintiff's March 10, 2001 accident and plaintiff's resultant left knee condition, Deputy Commissioner John B. Deluca awarded plaintiff temporary total disability compensation from December 4, 2002 through March 6, 2003. Defendants continued paying temporary total disability to plaintiff beginning March 7, 2003.
5. On March 7, 2003, plaintiff underwent a second left knee arthroscopy with Dr. Shepherd F. Rosenblum. Plaintiff was released by Dr. Rosenblum with no restrictions as of June 15, 2003.
6. Plaintiff participated in physical therapy from April 15, 2003 until approximately May 2004 with little or no complaints of right knee pain. Plaintiff returned to work as a computer troubleshooter. Plaintiff eventually resigned from this position and applied for unemployment compensation.
7. On March 24, 2004 plaintiff, having moved to the Myrtle Beach area, requested that Dr. James W. Yates, Jr., a South Carolina physician and orthopedic surgeon, be named as his authorized treating physician. Defendants did not oppose this motion, and plaintiff's care was transferred to Dr. Yates. Defendants filed a motion to have plaintiff's care transferred to Dr. Mark Rodger in Wilmington, North Carolina. Plaintiff opposed this motion. During oral arguments before the Full Commission, defendants agreed for plaintiff's care to be transferred to Strand Orthopedics in Myrtle Beach, South Carolina.
8. Plaintiff first saw Dr. Yates on May 3, 2004. At that time Dr. Yates suspected osteoarthritis in plaintiff's left knee and thought plaintiff may have either a meniscus or cartilage tear or arthritis. On June 3, 2004, Dr. Yates performed a diagnostic arthroscopy of plaintiff's *Page 5 
right knee. This procedure showed a torn medial meniscus as well as degenerative arthritis in plaintiff's right knee. Defendants paid for plaintiff's right knee arthroscopy procedure.
9. Plaintiff returned to physical therapy for both his left and right knees from approximately June 28, 2004 until July 5, 2005 with no complaints of left hip pain. On July 5, 2005, plaintiff complained during physical therapy of left hip pain and reported to Conway Medical Center on July 29, 2005 complaining of low back and left hip pain.
10. On August 24, 2005, plaintiff was evaluated by Dr. William Mills, Dr. Yates' partner at Coastal Orthopaedic Associates, who specializes in spinal surgery. Plaintiff complained of left hip pain and was diagnosed with radiculopathy and sciatica. An MRI of plaintiff's left hip and back was performed. The MRI of plaintiff's left hip was negative; however, plaintiff's lumbar spine showed broad-based bulges from L3-4 to L5-S1. Plaintiff returned to physical therapy. Dr. Mills testified that plaintiff's history of problems with his left leg did not have any relationship to plaintiff's back problems, and that plaintiff's back condition and spinal stenosis were caused by aging and degeneration, not gait alteration.
11. On November 9, 2006, in his contentions to Deputy Commissioner Gillen, plaintiff withdrew his claim for low back pain and left sciatica.
12. Dr. Yates testified that there is a general consensus in the orthopedic field that gait alteration could cause a patient to experience back pain and could aggravate an uninjured leg. He clarified that there is controversy over that subject and some in the medical profession would not agree. Dr. Yates was not able to say that plaintiff's gait alteration caused plaintiff's back pain, but did indicate that plaintiff's back pain was consistent with gait alteration. When asked if plaintiff's arthritic knee condition was caused by the 2001 injury, Dr. Yates compared answering the question to looking out at a parking lot and trying to guess from what towns the *Page 6 
cars in it were driven. Dr. Yates further testified that he did not know how long of a period of gait alteration would be required to lead to problems in other body parts.
13. Dr. Douglas Martini testified that plaintiff's right knee and back conditions were not related to plaintiff's 2001 work related injury, but instead were due to preexisting degenerative diseases. Dr. Martini also testified specifically that any gait alteration was not related to plaintiff's right knee condition. Dr. Martini also noted that no physician had documented plaintiff's gait abnormalities.
14. Dr. Donald D. Getz testified that plaintiff's right knee condition was caused by chronic degenerative osteoarthritis and further that his right knee condition was not causally related to the March 10, 2001 injury by accident. Dr. Getz went on to say that a limp is not a known cause of osteoarthritis of the knee. With regard to plaintiff's back condition, Dr. Getz testified that plaintiff suffers from a degenerative disease of the spine, unrelated to the March 10, 2001 injury, and that the findings displayed on plaintiff's back MRI were not caused by a limp.
15. Physical therapist Kristin Dorio testified that plaintiff's current condition(s) could possibly have been caused by trauma.
16. Having considered the testimony of Dr. Mills, Dr. Martini, Dr. Getz, Dr. Yates, and physical therapist Kristin Dorio, along with their methodologies, as well as their relative expertise and experience in their fields of expertise, the undersigned give greater weight to the testimony and expert opinions of Dr. Mills, Dr. Martini, and Dr. Getz.
17. After considering all of the medical evidence, the undersigned find that plaintiff has produced insufficient evidence to prove by the greater weight that the compensable March 10, 2001 accident caused, significantly exacerbated, or aggravated his right leg. *Page 7 
18. During oral arguments before the Full Commission the parties agreed that due to plaintiff's March 10, 2001 compensable injury to his left knee plaintiff is not capable of any employment and is temporarily totally disabled.
19. Plaintiff contends that he was denied due process by not receiving adequate notice of the issues to be decided by the deputy commissioner. However, based upon the motions, responses, and Orders filed in this case, the undersigned find as fact that plaintiff had adequate notice of the issues presented by defendants before the deputy commissioner, and plaintiff was not denied due process.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 10, 2001 plaintiff sustained a compensable injury by accident to his left knee when he fell at work. N.C. Gen. Stat. § 97-2.
2. As a result of the compensable March 10, 2001 injury by accident, plaintiff is temporarily totally disabled and is entitled to ongoing temporary total disability compensation as a result of his left knee condition beginning December 4, 2002. N.C. Gen. Stat. §§ 97-29; 97-2(9).
3. Plaintiff is entitled to have defendants pay all medical expenses, subject to the provisions of N.C. Gen. Stat. § 97-25.1, incurred to treat plaintiff's left knee condition. N.C. Gen. Stat. § 97-25.
4. Expert medical testimony that is speculation or conjecture is insufficient to support a causal connection between a plaintiff's condition and a workplace incident. In this case, plaintiff has produced insufficient evidence to prove that plaintiff's compensable March 10, *Page 8 
2001 injury caused, exacerbated, or aggravated his right leg condition.Holly v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000);Hodgin v. Hodgin, 159 N.C. App. 635, 583 S.E.2d 362 (2003).
5. Based upon the credible lay and medical evidence of record, plaintiff's right leg conditions are not the direct and natural result of or causally related to his March 10, 2001 injury by accident. N.C. Gen. Stat. § 97-2(6).
6. The North Carolina Workers' Compensation Act gives the Industrial Commission the discretion to order medical care as necessary. Plaintiff's medical treatment related to his compensable left knee injury shall be transferred to Strand Orthopedic as requested by defendants. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay ongoing temporary total disability payments until further Order of the Commission from which plaintiff's counsel shall be paid an attorney fee in the amount of 25% of plaintiff's disability payments.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred to treat plaintiff's compensable left knee injury, but are not responsible for treatment of plaintiff's right knee conditions.
3. Plaintiff's claim for benefits related to his right leg is hereby DENIED.
4. Plaintiff's medical care for his compensable left knee injury is hereby transferred to Strand Orthopedics in South Carolina. *Page 9 
5. Defendants shall bear the costs.
This the 19th day of December, 2007.
S/______________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC
COMMISSIONER
S/______________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1